UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____           │
│ DATE FILED: 9/29/16              │
└─────────────────────────────────┘
```

TYLER RODRIGUEZ,

                    Plaintiff,

          - against -

CITY OF NEW YORK, ANTONIO CUIN,
Warden of Manhattan Detention Complex –
NYC Dept. of Corr., CAPTAIN
ALMODOVAR, Shield # 1038,
CORRECTION OFFICER WILLIAMS,
Shield # 12782, CAPTAIN MYKE, Shield #
416, CORRECTION OFFICER ALLEN,
Shield # 72219, CAPTAIN WILLIAMS,
Shield # 820,

                    Defendants.

**ORDER**

14 Civ. 8647 (PGG) (FM)

PAUL G. GARDEPHE, U.S.D.J.:

          Pro se Plaintiff Tyler Rodriguez brings this action, pursuant to 42 U.S.C. § 1983,

against the City of New York (the "City"); Antonio Cuin, Warden of the Manhattan Detention

Complex ("MDC"); Captains Almodovar, Myke, and Williams; and Corrections Officers Allen

and Williams (collectively, the "Defendants"). Plaintiff – formerly an inmate at the MDC –

alleges that Defendants violated his constitutional rights by exposing him to pepper spray,

threatening to harm him if he reported an assault committed by corrections officers, and

transferring him to another facility after he filed a grievance. (Cmplt. (Dkt. No. 1)[1]; Am. Cmplt.

---

[1] The Complaint is spread over four docket entries. (See Dkt. Nos. 1-1; 1-2; 1-3; 1-4) This
Order cites to both the Complaint and the Amended Complaint, because the Amended Complaint
submitted by Plaintiff appears to be missing pages, including those that describe the assault that
is at the heart of Plaintiff's case.

(Dkt. No. 17)) Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 26)

On November 30, 2015, this Court referred Defendants' motion to Magistrate Judge Frank Maas for a Report and Recommendation ("R&R"). (Dkt. No. 32) On August 2, 2016, Judge Maas issued a 28-page R&R recommending that Defendants' motion to dismiss be granted in part and denied in part. (Dkt. No. 33) This Court will adopt the R&R as outlined below.

## BACKGROUND[2]

On September 10, 2014, while assigned to a sanitation work detail at the MDC, Rodriguez witnessed corrections officers assaulting an unidentified inmate (the "Inmate"). (Cmplt. (Dkt. No. 1-1)) At about 4:45 p.m. that day, Rodriguez was instructed to report for work on the third floor of the MDC. (Id. at 1)[3] As Rodriguez filled a mop bucket in a closet, he "hear[d] some yelling . . . and [ ] saw about 4 correction[s] officers an[d] a capt[a]in an[d] [the Inmate]." (Id.) Rodriguez alleges that the officers involved were Captain Almodovar, Officer Williams, Officer Allen, Captain Myke, and Officer Handly, a non-party to this action. (See Cmplt. (Dkt. No. 1-1) at 1; see also Am. Cmplt. (Dkt. No. 17) at 1-2, 4) Rodriguez states that he

---

[2] The Court's factual statement is drawn from the Complaint and Amended Complaint. See Cmplt. (Dkt. No. 1-1); Am. Cmplt. (Dkt. No. 17); see also Sathianathan v. Smith Barney, Inc., No. 04 Civ. 7122 (DAB) (FM), 2006 WL 538152, at *13 (S.D.N.Y. Feb. 24, 2006), report and recommendation adopted as modified, 2007 WL 576097 (S.D.N.Y. Feb. 21, 2007) ("[P]ro se pleadings may be read together to determine whether a plaintiff conceivably could be entitled to relief."). Rodriguez's factual allegations are presumed true for purposes of resolving Defendants' motion to dismiss. See Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

[3] All references to page numbers in this Order are as reflected in this District's Electronic Case Filing system.

attempted to leave the closet, but that "Handly . . . told me to get back in there[,] an[d] left the door ajar[ ]." (Cmplt. (Dkt. No. 1-1) at 1)

Rodriguez heard more yelling, so he "looked through a square hole in the door . . . to see what[] [was] happening." (Id.) Rodriguez heard Captain Myke yell, "take the hand cuffs off this wanna be gang[s]ter[,] he wanna be a [tough] [g]uy."[4] (Id.) The Inmate pleaded, "[D]on't take them off." (Id.) Ignoring the Inmate's pleas, Captain Almodovar removed the handcuffs and told the Inmate, "[Y]ou uncuffed[,] now pop off." (Id.) The Inmate begged the officers to "put the handcuffs back on," adding "you got it[,] you got it[,] you win." (Id.) Captain Myke responded, "[P]ut the hand cuffs back on this punk.  I knew this pussy was all talk." (Id.) Officer Williams then said, "[Y]ou punk ass bitch[,] talking all that shit and you ain[']t doin[g] shit." (Id. at 2)  Williams then "punched [the] Inmate in his face[,] . . and [he] fell to the floor." (Id.)

Although Rodriguez's view was obstructed, "[i]t sound[ed] like they were just hit[t]ing him an[d] hit[t]ing him." (Id.)  The Inmate yelled, "Stop[,] stop[,] please[,] please." (Id.)  The Inmate then threatened to sue the officers.  One of the officers responded that he "knew [the Inmate] was going to say that." (Id.)  Rodriguez then "hear[d] them beating on him more." (Id.)  The Inmate cried, "I[']m not g[o]nna say anything[.]  I[']ll hold it down[.]  I[']ll hold it down[,] please.  [T]hat[']s my word[.]  I swear to god[.]  I swear to my [d]ead gran[d]mother[.]  I swear." (Id.)  Captain Myke retorted, "[Y]ou gonna hold it down now[.]  Spray him like a roach." (Id.)  Rodriguez "hear[d] the Inmate crying an[d] [it] sound[ed] like he was chok[]ing." (Id.)

---

[4] The Complaint refers to "a capt[a]in," and not to Captain Myke by name. (Cmplt. (Dkt. No. 1-1) at 1)  However, Plaintiff refers to Captain Almodovar by name throughout his narrative, and Captain Myke was the only other supervisor present.  (See R&R (Dkt. No. 33) at 3 n.4)

After the spray was used, Rodriguez started to "cough an[d] and cough." (Id. at 3) Rodriguez "took 3 pumps of [his asthma inhaler]," and "started to choke on [his] spit." (Id.) He "took [his] shirts off fast[,] wet [his] white T[-]shirt, [and] put it around [his] mouth." (Id.) Unable to bear the fumes from the spray any longer, Rodriguez "banged on the door of the closet and pushed it open[]." (Id.) The Defendants then directed Rodriguez to go to the "3-2 cells." (Id.)

The next day, September 11, 2014, Rodriguez was serving sandwiches to other inmates on the second floor of the MDC. Officer Allen told Rodriguez to "hurry up[,] keep it mov[]ing." (Id. at 5) After Rodriguez responded that he was "just doing [his] job," Allen told Rodriguez, "I don[']t give a fuck[.] I've been doing this shit for years[,] an[d] I already know about you[.] [S]o if you do[n't] want to take the [n]ext bus to Rikers[,] an[d] [have] good time taken away[,] I su[gg]est you keep it [m]ov[ ]ing before I write [your] ass up." (Id.) Later that afternoon, Captain Almodovar approached Rodriguez and said, "[W]hat is this I hear you talking . . . about what happen[ed] yest[e]rday[?] . . . [I]f I [were] you[,] I would shut the fuck up an[d] keep [your] mouth shut [be]cause if it gets back to me that you [are] talking there[']s going to be a problem. So keep [your] mouth shut about what happen[ed] [be]cause the same shit can happen to you." (Id. at 7)

On September 12, 2014, Captain Williams[5] approached Rodriguez and asked whether he would like to "go see the psychiatrist." (Id. at 9) On the way to the psychiatrist, Captain Williams told Rodriguez that he had heard that Rodriguez was having a problem with a corrections officer, and asked whether one of his staff members had threatened Rodriguez. (Id.)

---

[5] Captain Williams – not to be confused with Officer Williams – is not alleged to have been present during the September 10 assault.

Rodriguez told Captain Williams that he was "verbally threatened by a correction[s] officer" after seeing something he "was not supposed to see." (Id.) Captain Williams told Rodriguez that the officers who had committed the assault would "[d]o everything in their power" to say that Rodriguez was not present at the assault, and would "try to cover their asses for the safety of their job[s]." (Id. at 9-10) Captain Williams "tr[i]ed to have [Rodriguez] write a statement . . . and say what happened." (Id. at 10) When Rodriguez refused to give a written statement, Captain Williams "looked very mad." (Id. at 11)

Within two weeks of these events, Rodriguez filed a grievance at the MDC. A short time later, Rodriguez was transferred to Rikers Island. (Cmplt. (Dkt. No. 1-4) at 1) Rodriguez alleges that as a result of the events described in the Complaint, he is seeing a psychiatrist, taking medication, having nightmares and flashbacks, and suffering from depression. (Am. Cmplt. (Dkt. No. 17) at 11)

Rodriguez's original complaint, dated September 25, 2014, was received by this District's Pro Se Office on October 28, 2014. (Cmplt. (Dkt. No. 1-4)) On March 17, 2015, this Court issued an order directing Rodriguez to amend the original complaint to identify the Doe Defendants. (Dkt. No. 15) On April 2, 2015, Rodriguez filed an Amended Complaint. (Dkt. No. 17) On October 9, 2015, Defendants filed a motion to dismiss.[6] (Dkt. No. 26) On November 30, 2015, this Court referred the motion to Magistrate Judge Maas for an R&R. (Dkt. No. 32) On August 2, 2016, Judge Maas issued an R&R, recommending that Defendants' motion be granted in part and denied in part. (Dkt. No. 33)

---

[6] Rodriguez has not filed an opposition to the motion to dismiss. (See Dkt. No. 30) "This Court, therefore, will assess the merits of the defendant's motion without any input from the plaintiff." Parris v. Attorney Gen., No. 02 CIV.4225 (GBD), 2003 WL 367842, at *1 (S.D.N.Y. Feb. 19, 2003).

Judge Maas concluded that, read liberally, Rodriguez's pleadings asserted claims for (1) excessive force under the Eighth Amendment; (2) violations of procedural due process under the Fourteenth Amendment; (3) unlawful retaliation under the First Amendment; and (4) intentional infliction of emotional distress under New York state law. (R&R (Dkt. No. 33) at 7) Judge Maas recommended that Defendants' motion to dismiss be granted except as to (1) Rodriguez's Eighth Amendment claim against Officers Allen and Williams and Captains Almodovar and Myke; and (2) Rodriguez's the First Amendment retaliation claim against Officers Allen and Williams and Captains Almodovar, Myke, and Williams. (Id. at 27) Judge Maas's R&R gave notice that any objections were to be filed within fourteen days from service of the R&R, and that "the failure to file . . . timely objections will result in a waiver of those objections for purposes of appeal." (Id. at 28)

On August 31, 2016, Defendants filed objections to the R&R, arguing that Defendant's motion to dismiss should be granted in its entirety. (Dkt. No. 37) Plaintiff has submitted no objections to the R&R.

## DISCUSSION

## I.     LEGAL STANDARD

### A.     Review of Magistrate Judge's Report and Recommendation

In evaluating a magistrate judge's R&R, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), a party may submit objections to the magistrate judge's R&R. Any objections must be "specific" and "written," and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1).

Where, as here, a party submits timely objections to an R&R,[7] "[the district judge] shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72(b)(3). "However, when a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." Renelique v. Doe, No. 99 Civ. 10425 (LTS) (HBP), 2003 WL 23023771, at *1 (S.D.N.Y. Dec. 29, 2003). A decision is "clearly erroneous" when, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006) (quotation marks and citation omitted).

Here, Defendants have made specific objections to Judge Maas' findings concerning Rodriguez's Eighth Amendment excessive force claim and First Amendment retaliation claim. Accordingly, the portions of the R&R addressing those claims will be reviewed de novo. The remainder of the R&R will be reviewed for clear error. See Covington v. Warden, Five Points Corr. Facility, No. 11 Civ. 8761 (AT) (FM), 2016 WL 3407845, at *1 (S.D.N.Y. June 16, 2016) ("The court may adopt those portions of the R & R to which no objection is made 'as long as no clear error is apparent from the face of the record.'" (quoting Oquendo v. Colvin, No. 12-cv-4527-RA-RLE, 2014 WL 4160222, at *2 (S.D.N.Y. Aug. 19, 2014))).

---

[7] Judge Maas issued his R&R on August 2, 2016. (Dkt. No. 33) On August 19, 2016, this Court extended Defendants' time to file objections until August 31, 2016. (Dkt. No. 35) Defendants filed their objections on August 31, 2016. (Dkt. No. 36)

B.     **Motion to Dismiss Standard**

Defendants have moved to dismiss the Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner, 496 F.3d at 237 (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Ne, Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

Because Rodriguez is proceeding pro se, this Court is required to read his pleadings liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed.'") (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Accordingly, this Court will construe Rodriguez's pleadings "'to raise the strongest arguments that they suggest.'" Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009) (quoting Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001)). However, "the court need not accept as true 'conclusions of law or unwarranted deductions of fact.'" Whitfield v. O'Connell, No. 09 Civ. 1925 (WHP), 2010 WL

1010060, at *4 (S.D.N.Y. Mar. 18, 2010) (quoting First Nationwide Bank v. Gelt Funding Corp.,

27 F.3d 763, 771 (2d Cir. 1994)).

## II. DEFENDANTS' OBJECTIONS REGARDING THE EIGHTH AMENDMENT EXCESSIVE FORCE CLAIM

The R&R concludes that Rodriguez "pleaded facts sufficient to state an Eighth

Amendment excessive force claim based on a transferred intent theory." (R&R (Dkt. No. 33) at

12)  In their objections to the R&R, Defendants complain that, "[a]lthough pro se complaints

should be liberally construed to assert otherwise unartfully pled causes of action, nowhere in

plaintiff's complaint does he allege the facts recited in the [R&R]." (Def. Obj. Br. (Dkt. No. 37)

at 8)  Defendants further contend that the R&R's analysis is internally inconsistent, and that

Judge Maas erred in concluding that Rodriguez had pleaded sufficient facts to state a claim for

excessive force. (Id. at 10-13)

### A. **Applicable Law**

"The Eighth Amendment, which applies to the states through the Due Process

Clause of the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual

punishments,' including the 'unnecessary and wanton infliction of pain.'" Sims v. Artuz, 230

F.3d 14, 20 (2d Cir. 2000) (internal citations omitted).  "A claim of cruel and unusual

punishment . . . has two components – one subjective, focusing on the defendant's motive for his

conduct, and the other objective, focusing on the conduct's effect." Id. (citing Hudson v.

McMillian, 503 U.S. 1, 7-8 (1992); Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999)).

"Subjectively, the plaintiff must demonstrate that the defendant acted wantonly.  The essential

question is 'whether force was applied in a good-faith effort to maintain or restore discipline, or

maliciously and sadistically to cause harm.'" Virella v. Pozzi, No. 05 Civ. 10460 (RWS), 2006

WL 2707394, at *3 (S.D.N.Y. Sept. 20, 2006) (citing Hudson, 503 U.S. at 7) (internal citation

omitted).  "Objectively, the plaintiff must show that the violation is 'sufficiently serious or

harmful.'"  Id. (quoting United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999)).  "[A] claim of

excessive force may be established even if the victim does not suffer 'serious' or 'significant'

injury, provided that the amount of force used is more than 'de minimis,' or involves force that is

'repugnant to the conscience of mankind."  Walsh, 194 F.3d at 47-48 (quoting Estelle, 429 U.S.

at 106; Hudson, 503 U.S. at 9-10) (internal citation omitted).

### B.   Defendants' Objections

#### 1.   The Magistrate Judge's Interpretation of Plaintiff's Factual Allegations

Defendants contend that Judge Maas "erroneously inserted material facts into the

Complaint in order to find an adequately pled excessive force claim."  (Def. Obj. Br. (Dkt. No.

37) at 7)  Specifically, Defendants claim that Judge Maas improperly inferred that Plaintiff had

pled that (1) he "inhaled . . . 'spray' used on another inmate"; (2) "that the spray was a 'chemical

agent'"; and (3) "that he 'took off his shirt, wet it, and put it around his mouth in an attempt to

counteract the effects of the spray.'"  (Id. at 8-9)  Defendants argue that the "'spray' could just as

easily be construed to be a spray of water as oppose[d] to any 'chemical agent.'"  (Id. at 9 n.2)

As noted above, this Court "must construe [Plaintiff's pleadings] liberally, 'to

raise the strongest arguments that [they] suggest.'"  Fulton, 591 F.3d at 43 (quoting Green, 260

F.3d at 83).  "This is especially true when dealing with civil rights complaints like this one."

Weinstein v. Albright, 261 F.3d 127, 132 (2d Cir. 2001).

Here, Rodriguez alleges that, after the corrections officers "sprayed [the Inmate],"

Rodriguez heard the Inmate "crying an[d] sound like he was chok[]ing."  (Cmplt. (Dkt. No. 1-1)

at 2)  Rodriguez then "started to cough an[d] cough," so he "took [his] [a]s[t]hma pump out that

[he] carr[ies] an[d] took 3 pumps."  (Id. at 3)  Rodriguez then "started to choke on [his] spit,"

"took [his] shirts off fast[,] wet [his] white [t-]shirt[, and] put it around [his] mouth." (Id.)

Given these allegations, and the obligation to read them liberally, this Court perceives no error in

Judge Maas's interpretation of Rodriguez's factual narrative.  Although Rodriguez does not

describe the precise nature of the spray, there is an ample basis from which to infer that the

corrections officers used some type of chemical agent or pepper spray, including the following:

(1) Captain Myke ordered that the Inmate be sprayed "like a roach"; (2) Rodriguez heard the

Inmate "crying an[d] sound like he was chok[]ing" after being sprayed; (3) the spray caused

Rodriguez to suffer a coughing fit that required him to use his asthma inhaler multiple times; and

(4) Rodriguez reacted to the spray's fumes by wrapping a wet t-shirt around his face, in an

obvious effort to block the fumes from the spray.  (See Cmplt. (Dkt. No. 1-1) at 2-3)  Given

these allegations, Judge Maas's reading of Rodriguez's pleadings was reasonable.

### 2.    The Consistency of the Magistrate Judge's Findings Regarding the Force that Was Used

Defendants contend that the R&R is internally inconsistent, because Judge Maas

found that the Defendants' "alleged conduct . . . rose to the level of malicious and sadistic

[conduct necessary] to satisfy the subjective element of an excessive force claim," while also

concluding that the "same conduct was not sufficiently outrageous to rise to the level of the state

tort action of intentional infliction of emotional distress." (Def. Obj. Br. (Dkt. No. 37) at 10)

There is no inconsistency in Judge Maas's findings, which are dictated by the different standards

that apply to each claim.

In Harrell v. Cty. of Nassau, No. 10-CV-5894 (MKB), 2013 WL 5439137

(E.D.N.Y. Sept. 27, 2013), plaintiff alleged that he had been assaulted by the police and brought

claims for, inter alia, excessive force and intentional infliction of emotional distress.  Harrell,

2013 WL 5439137, at *1.  In (1) denying defendants' motion for summary judgment on the

excessive force claim, and (2) granting defendants' motion on the intentional infliction of

emotional distress claim, the court stated:

> In New York, a claim for intentional infliction of emotional distress is "extremely
> disfavored," and "[o]nly the most egregious conduct has been found sufficiently
> extreme and outrageous to establish" such a claim. Medcalf v. Walsh, No. 12
> Civ. 509(PAE), 2013 WL 1431603, at *7 (S.D.N.Y. Apr. 9, 2013); see also
> Tebbenhoff v. Elec. Data Sys. Corp., 244 F. App'x 382, 384 (2d Cir. 2007)
> (observing that New York's standard for extreme and outrageous conduct is
> "rigorous, and difficult to satisfy"). The "extreme and outrageous conduct"
> element requires that the conduct rise to the level of being "so outrageous in
> character, and so extreme in degree, as to go beyond all possible bounds of
> decency, and to be regarded as atrocious and utterly intolerable in a civilized
> society." Rubinow v. Boehringer Ingelheim Pharms., Inc., 496 F. App'x 117, 119
> (2d Cir. 2012) (citation and internal quotation marks omitted); see also Margrabe
> v. Sexter & Warmflash, P.C., 353 F. App'x 547, 550 (2d Cir. 2009) ("[C]ourts are
> reluctant to allow recovery under the banner of intentional infliction of emotional
> distress absent a deliberate and malicious campaign of harassment or intimidation.
> . . . [A] court may decide whether alleged conduct is sufficiently outrageous as a
> matter of law." (citations and internal quotation marks omitted)); Lan Sang v.
> Ming Hai, No. 12 Civ. 7103, 2013 WL 3215458, at *16 (S.D.N.Y. June 27, 2013)
> ("'[T]he rigor of the outrageousness standard is well established.' Conduct must
> have been 'so outrageous in character, and so extreme in degree, as to go beyond
> all possible bounds of decency, and to be regarded as atrocious, and utterly
> intolerable in a civilized society.'" (citations omitted)).

Id. at *13.

Given the extremely high pleading hurdle that applies to an intentional infliction

of emotional distress claim, it is not surprising that Judge Maas recommends dismissal of that

claim while simultaneously recommending that the excessive force claim be permitted to

proceed. Having reviewed the R&R and the record, this Court finds no error in that

recommendation.

### 3. Whether the Magistrate Judge Relied on Force Employed Against Another Inmate

Defendants contend that the R&R "erroneously considered all of the force alleged

to have been used . . . as opposed to just the portion of the assault that the [R&R] concluded

affected [Plaintiff] (i.e., the "spray")." (Def. Obj. Br. (Dkt. No. 37) at 12-13)  Defendants argue

that Judge Maas should "have concluded . . . that the minimal amount of force arguably used on

plaintiff was not more than de minim[i]s."  (Id. at 13)

   In concluding that Plaintiff had pled sufficient facts to satisfy the objective prong

of an excessive force claim, Judge Maas relied on Plaintiff's allegation "that his inhalation of the

chemical agent used on the other inmate caused him to choke and have an asthmatic episode."

(R&R (Dkt. No. 33) at 10)  While noting that Rodriguez had made "limited allegations of

physical injury" (id. at 11-12), Judge Maas concluded that Plaintiff's allegations concerning the

effect of the spray on him were sufficient at the motion to dismiss stage.  (Id.)

   "'The Eighth Amendment's prohibition of "cruel and unusual" punishments

necessarily excludes from constitutional recognition de minimis uses of physical force, provided

that the use of force is not of a sort repugnant to the conscience of mankind.'"  Wilkins v. Gaddy,

559 U.S. 34, 37-38 (2010) (quoting Hudson, 503 U.S. at 9-10).  "But 'certain actions, including

the malicious use of force to cause harm, constitute Eighth Amendment violations per se.'"

Harris v. Miller, 818 F.3d 49, 64 (2d Cir. 2016) (quoting Blyden, 186 F.3d at 263).  Moreover,

the Supreme Court has cautioned district courts against concluding that "the absence of 'some

arbitrary quantity of injury' requires automatic dismissal of an excessive force claim."  Wilkins,

559 U.S. at 39 (quoting Hudson, 503 U.S. at 9).

   Here, Defendants assert that this Court should conclude now, as a matter of law,

that Plaintiff's exposure to the chemical or pepper spray was the consequence of no more than a

de minimis use of physical force.  Defendants cite no cases involving the use of chemical or

pepper sprays, however, even though there is a substantial body of case law documenting that

exposure to such substances causes "'a variety of incapacitating and painful effects.'"  Toliver v.

New York City Dep't of Corr., No. 10-cv-5355 (RJS), 2016 WL 4705166, at *3 (S.D.N.Y. July 29, 2016) (quoting Tracy v. Freshwater, 623 F.3d 90, 98-99 (2d Cir. 2010) ("Unquestionably, infliction of pepper spray on an arrestee has a variety of incapacitating and painful effects.") (collecting cases)).  This Court concludes that Plaintiff has pled sufficient facts concerning the effect of the spray on him to survive a motion to dismiss.

### III.   DEFENDANTS' OBJECTIONS REGARDING THE FIRST AMENDMENT RETALIATION CLAIM

Judge Maas concluded that Rodriguez has stated a First Amendment retaliation claim.  (R&R (Dkt. No. 33) at 16-19)  In a three-sentence objection, Defendants argue that Judge Maas's "finding was erroneous and should be reviewed de novo" because "the [R&R] accepted plaintiff's conclusory allegations that he was transferred from MDC and lost his job assignment as a result of filing a grievance."  (Def. Obj. Br. (Dkt. No. 37) at 14)  Since this objection does no more than reiterate an argument considered and rejected by Judge Maas (see Def. Motion to Dismiss Br. (Dkt. No. 28) at 22 (arguing that "plaintiff conclusorily alleges that he filed a grievance complaining of the 'threats, treatment, and abuse' and 'was transferred out of [MDC] . . . as a result)), this portion of Judge Maas's recommendation will be reviewed for clear error. See Renelique, 2003 WL 23023771, at *1.

### A.   Applicable Law

"[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following:  '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'"  Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (quoting Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001), overruled on other grounds, Swierkiewicz v. Sorema, 534 U.S. 506 (2002)).  "These allegations may not be conclusory; they

must have some basis in specific facts that are not inherently implausible on their face." <u>Jones v. Harris</u>, 665 F. Supp. 2d 384, 397 (S.D.N.Y. 2009).  Furthermore, "[c]ourts have been cautioned to approach First Amendment retaliation claims by prisoners with skepticism and particular care." <u>Id.</u> (citing <u>Davis v. Goord</u>, 320 F.3d 346, 352 (2d Cir. 2003)).

An "adverse action" is conduct "that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." <u>Dawes</u>, 239 F.3d at 493; <u>see also Davis</u>, 320 F.3d at 353 ("[R]etaliation against an inmate must be likely to 'chill a person of ordinary firmness from continuing to engage' in a protected activity.") (quoting <u>Thaddeus-X v. Blatter</u>, 175 F.3d 378, 397 (6th Cir. 1999)).  "In making this determination, the court's inquiry must be 'tailored to the different circumstances in which retaliation claims arise,' bearing in mind that '[p]risoners may be required to tolerate more . . . than average citizens, before a [retaliatory] action taken against them is considered adverse.'" <u>Davis</u>, 320 F.3d at 353 (quoting <u>Dawes</u>, 239 F.3d at 493 (quoting <u>Thaddeus-X</u>, 175 F.3d at 398)) (alterations in original).

In evaluating the causal connection requirement, the Second Circuit has stated that courts should "exercise [their] judgment about the permissible inferences that can be drawn from temporal proximity" between the exercise of a constitutional right and retaliatory action. <u>Espinal v. Goord</u>, 558 F.3d 119, 129 (2d Cir. 2009).

**B.**   **<u>Analysis</u>**

Rodriguez has alleged that he filed a grievance "complain[ing] about the threats, treatment and abuse [from corrections officers]," and was then "transferred out of [MDC] to [the] Eric M. Taylor Center [at Rikers Island]." (Cmplt. (Dkt. No. 1-4) at 1)  "[R]etaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable

15

under § 1983." <u>Graham v. Henderson</u>, 89 F.3d 75, 80 (2d Cir. 1996).  The Court concludes that

Rodriguez has sufficiently alleged that he engaged in protected speech.

   To satisfy the second prong of a First Amendment retaliation claim, Rodriguez

must allege facts demonstrating that Defendants "took adverse action" against him.  As noted

above, an "adverse action" is conduct "that would deter a similarly situated individual of

ordinary firmness from exercising his or her constitutional rights." <u>Dawes</u>, 239 F.3d at 493; <u>see

also</u> <u>Davis</u>, 320 F.3d at 353.

   Whether Rodriguez's transfer to another prison would deter a "similarly situated

individual of ordinary firmness" cannot be resolved as a matter of law at this stage of the

proceedings.  The Second Circuit has held, however, that a prison transfer may constitute an

adverse action.  <u>See</u> <u>Davis v. Kelly</u>, 160 F.3d 917, 920 (2d Cir. 1998) ("prison authorities may

not transfer an inmate in retaliation for the exercise of constitutionally protected rights").

"Therefore, 'at this early state, the[se] allegation[s] . . . must be construed as describing an

adverse action,' and . . . [Plaintiff] 'should have the opportunity to develop facts that would

demonstrate that [Defendants' actions] would deter a reasonable inmate from pursuing

grievances.'" <u>Davis</u>, 320 F.3d at 354 (quoting <u>Morales v. Mackalm</u>, 278 F.3d 126, 131-32 (2d

Cir. 2002), <u>abrogated on other grounds by</u> <u>Porter v. Nussle</u>, 534 U.S. 516 (2002)).

   With respect to causation, "[a] plaintiff can establish a causal connection that

suggests retaliation by showing that protected activity was close in time to the adverse action."

<u>Espinal</u>, 558 F.3d at 129 (citing <u>Clark Cty. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273-74 (2001);

<u>Gorman-Bakos v. Cornell Coop. Extension</u>, 252 F.3d 545, 554 (2d Cir. 2001)).  As Judge Maas

explained, Rodriguez does "not specif[y] when he filed his grievance, [but] it is clear that he

must have done so by September 25, 2014, when he gave his Complaint to prison officials for

16

mailing. . . . Since his transfer clearly also was effected by that date, there was at most a two-week gap between his grievance and transfer." (R&R (Dkt. No. 33) at 18)  Given the close temporal proximity between Rodriguez's grievance and his transfer, this Court finds that Rodriguez has adequately alleged a causal connection.

Accordingly, Defendants' motion to dismiss Rodriguez's First Amendment retaliation claim will be denied.[8]

### C.   DEFENDANTS' OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDING THAT THEY ARE NOT ENTITLED TO QUALIFIED IMMUNITY

The individual defendants object to Judge Maas's "finding that Defendants are not entitled to qualified immunity on plaintiff's Eighth Amendment excessive force claim." (Def. Obj. Br. (Dkt. No. 37) at 14)  They contend that Judge Maas erred in rejecting their "argu[ment] that there is no clearly established right to be free from witnessing force used on another individual." (Id.)  Defendants also contend that they are entitled to qualified immunity with respect to their use of the chemical or pepper spray – which caused Plaintiff to suffer the symptoms discussed above – because Plaintiff was an "unintended recipient of force." (Id.)  Given Defendants' concession that they are reiterating an argument already rejected by Judge Maas, this Court reviews this portion of the R&R for clear error.

As a general matter, correctional officers who violate a plaintiff's constitutional rights are nevertheless entitled to qualified immunity if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

---

[8]  Judge Maas recommends granting Defendants' motion to dismiss "to the extent that Rodriguez seeks to assert a Fourteenth Amendment procedural due process claim as a result of his transfer to Rikers Island and consequent loss of his MDC job assignment." (R&R (Dkt. No. 33) at 15)  There are no objections to this portion of the R&R, and this Court has identified no clear error on the face of the record.  Accordingly, this claim will be dismissed.

Stephenson v. Doe, 332 F.3d 68, 77 (2d Cir. 2003) (citation omitted). "In determining if a right is clearly established, this Court looks to whether (1) it was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was unlawful." Doninger v. Niehoff, 642 F.3d 334, 345 (2d Cir. 2011) (citing Young v. Cty. of Fulton, 160 F.3d 899, 903 (2d Cir. 1998)). "It is indisputable that freedom from the use of excessive force is a clearly established constitutional right." Atkins v. Cty. of Orange, 372 F. Supp. 2d 377, 401 (S.D.N.Y. 2005). But "a determination of whether the right at issue was 'clearly established' 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Doninger, 642 F.3d at 345 (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001), abrogated on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009)).

Here, the allegations in Rodriguez's complaints foreclose the application of qualified immunity to his Eighth Amendment excessive force claim at this stage of the proceedings. As an initial matter, Plaintiff pleads facts demonstrating that Defendants engaged in a vicious assault of another inmate – conduct that a reasonable officer "would have understood . . . was unlawful." Id. It can reasonably be inferred from the pleaded facts that the Defendants were aware that Rodriguez was in close proximity to the alleged assault, because he was observed standing in a nearby hallway closet prior to the assault. Moreover, one of the corrections officers present – Officer Handly – "told [Plaintiff] to get back in there an[d] left the door [of the hallway closet] ajar[]." (Cmplt. (Dkt. No. 1-1) at 1) Rodriguez further alleges that – despite being aware that Plaintiff was present in the adjacent hallway closet – Defendants proceeded to use the chemical or pepper spray in what reasonably can be inferred to have been an indiscriminate manner. (Id. at 1-2) Whether or not Plaintiff was the "[]intended recipient of

18

[Defendants'] force" (Def. Obj. Br. (Dkt. No. 37) at 14), he suffered the consequences of Defendants' use of the chemical or pepper spray, and the alleged respiratory effects suffered by Plaintiff – based on the facts pleaded in the complaints – would have been reasonably foreseeable to Defendants.  Defendants' use of the chemical or pepper spray in the circumstances described in the complaints would run counter to clearly established Second Circuit law requiring that such substances "not be used lightly or gratuitously" by police and corrections officers.  Tracy, 623 F.3d at 98; see also Alston v. Daniels, No. 3:15-cv-669 (CSH), 2015 WL 7257896, at *4 (D. Conn. Nov. 17, 2015 ("In the Second Circuit, a prison guard's use of a chemical agent . . . on an inmate may, under certain circumstances, constitute unnecessary and wanton infliction of pain in violation of the Eighth Amendment." (citing Tracy, 623 F.3d at 98)).  Accordingly, "the Court is not prepared to find [at this stage of the proceedings] that [Defendants'] decision to [use] pepper-spray . . . was objectively reasonable, as it must for Defendant[s] to prevail on [their] qualified immunity argument."  Toliver, 2016 WL 4705166, at *5 (citing Tracy, 623 F.3d at 99 n.5 ("[I]t was well established at the time of the underlying altercation that the use of entirely gratuitous force is unreasonable and therefore excessive, see, e.g., Breen v. Garrison, 169 F.3d 152, 153 (2d Cir. 1999), and in light of this precedent, we presume that no reasonable officer could have believed that he was entitled to use pepper spray gratuitously against a restrained and unresisting arrestee.")).  Defendants' motion to dismiss Plaintiff's Eighth Amendment excessive force claim on grounds of qualified immunity will be denied.

Defendants do not object to Judge Maas's conclusion that they are not entitled to qualified immunity on Rodriguez's First Amendment retaliation claim, and this Court sees no error in that determination.

19

IV.   **CLAIMS AGAINST THE CITY AND WARDEN CUIN**

Judge Maas concluded that Rodriguez's claims against the City and Warden Cuin must be dismissed, because Plaintiff "has failed to allege facts sufficient to hold either . . . liable" for his excessive force claim or First Amendment retaliation claim. (R&R (Dkt. No. 33) at 21) "Although plaintiff names [both the City and Warden Cuin] in the caption of his complaint, he does not allege any facts in the body of his complaint to support [such] claim[s]." Jones v. City of New York, No. 16-CV-1289 (KAM)(LB), 2016 WL 4435220, at *2 (E.D.N.Y. Aug. 19, 2016). This Court finds no clear error in Judge Maas's recommendation. Accordingly, those claims will be dismissed.

V.   **LIMITATION OF DAMAGES UNDER THE**
     **PRISON LITIGATION REFORM ACT**

Judge Maas recommended that this Court reject Defendants' contention "that Rodriguez is not entitled to recover damages for mental and emotional injuries because he has not alleged physical injury." (R&R (Dkt. No. 33) at 25) Defendants have not objected to this recommendation. Accordingly, this Court reviews this recommendation for clear error.

Section 1997e(e) of the Prison Litigation Reform Act (the "PLRA") bars "damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical injury." Thompson v. Carter, 284 F.3d 411, 417 (2d Cir. 2002). Here, as discussed above in connection with Rodriguez's excessive force claim, there are allegations of physical injury. (See Cmplt. (Dkt. No. 1-1) at 3) At this stage, these allegations are sufficient to overcome the Section 1997e(e) bar. Frieson v. City of New York, No. 11 Civ. 4611 (JGK), 2012 WL 1948782, at *2 (S.D.N.Y. May 30, 2012) ("[A]t the motion to dismiss stage, the Court cannot, and need not, conclusively resolve the factual question of whether or not the plaintiff suffered physical injury in addition to his claimed mental and emotional injury.").

20

Rodriguez may also recover for "intangible deprivations of [his] liberty and personal rights." R&R (Dkt. No. 33) at 26; see also Kerman v. City of New York., 374 F.3d 93, 125 (2d Cir. 2004) ("The damages recoverable for [a plaintiff's Fourth Amendment claims] are separable from damages recoverable for such injuries as physical harm, embarrassment, or emotional suffering."). Accordingly, Rodriguez can pursue compensatory damages on his First Amendment retaliation claim. See Lipton v. Cty. of Orange, 315 F. Supp. 2d 434, 457 (S.D.N.Y. 2004) ("[T]here is an exception to the aforementioned PLRA preclusion of compensatory damages in the absence of physical injury that is applicable to cases wherein the constitutional right that is allegedly violated arises under the First Amendment.").

Moreover, as the R&R acknowledges, the PLRA does not place "limitations on injunctive and declaratory relief [or] nominal and punitive damages." R&R (Dkt. No. 33) at 25-26; see Thompson, 284 F.3d at 418. Rodriguez is therefore entitled to pursue these remedies with respect to his remaining claims.

## CONCLUSION

For the reasons stated above, this Court adopts Judge Maas's recommendation that Defendants' motion to dismiss be denied with respect to (1) Plaintiff's Eighth Amendment excessive force claim against Officer Allen, Officer Williams, Captain Aldmodovar, and Captain Myke; and (2) Plaintiff's First Amendment retaliation claim against Officer Allen, Officer Williams, Captain Aldmodovar, Captain Myke, and Captain Williams. Plaintiff's remaining claims are dismissed.

The Clerk of the Court is directed to terminate the motion (Dkt. No. 26) and to mail a copy of this Order to Tyler Rodriguez, 149 Stephens Ave., Apt. 1, Bronx, New York 10473.

21

This Court will conduct a conference in this matter on October 6, 2016, at 10:45 a.m. in Courtroom 705 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York.

Dated: New York, New York
       September 28, 2016                    SO ORDERED.

                                            _Paul Gardephe_
                                            Paul G. Gardephe
                                            United States District Judge